1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MINODORA BECK,                         )  Case No. EDCV 13-1314-JPR
                                       )
                  Plaintiff,           )
                                       )
          vs.                          )  **MEMORANDUM OPINION AND ORDER**
                                       )  **AFFIRMING COMMISSIONER**
CAROLYN W. COLVIN, Acting              )
Commissioner of Social                 )
Security,                              )
                                       )
                  Defendant.           )
                                       )

**I.    PROCEEDINGS**

        Plaintiff seeks review of the Commissioner's final decision

denying her applications for disability insurance benefits

("DIB") and supplemental security income ("SSI").  The parties

consented to the jurisdiction of the undersigned U.S. Magistrate

Judge under 28 U.S.C. § 636(c).  This matter is before the Court

on the parties' Joint Stipulation, filed April 17, 2014, which

the Court has taken under submission without oral argument.  For

the reasons stated below, the Commissioner's decision is affirmed

and judgment is entered in her favor.

1

**II.   BACKGROUND**

Plaintiff was born on May 29, 1950. (AR 179.)  She obtained a GED and is a certified nursing assistant. (AR 211.)  She previously worked as a machinist, nanny, inpatient caregiver, in-home caregiver, and caregiver to her mother. (AR 32-33, 198, 211.)

Plaintiff filed applications for DIB and SSI on August 16, 2011. (AR 179-92.)  She alleged that she had been unable to work since July 17, 2010, because of a broken right ankle, plates and screws in that ankle, back injury, and pain in both shoulders. (AR 210.)  After her applications were denied, she requested a hearing before an Administrative Law Judge. (AR 117-18.)

A hearing was held on June 22, 2011. (AR 24-56.) Plaintiff, who was represented by counsel, testified, as did a vocational expert. (<u>Id.</u>)  In a written decision issued April 17, 2012, the ALJ determined that Plaintiff was not disabled. (AR 12-20.)  On May 30, 2013, the Appeals Council denied her request for review. (AR 1-3.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. <u>Id.</u>; <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).  It

2

1  is more than a scintilla but less than a preponderance.

2  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

3  Admin., 466 F.3d 880, 882 (9th Cir. 2006)).   To determine whether

4  substantial evidence supports a finding, the reviewing court

5  "must review the administrative record as a whole, weighing both

6  the evidence that supports and the evidence that detracts from

7  the Commissioner's conclusion."   Reddick v. Chater, 157 F.3d 715,

8  720 (9th Cir. 1996).   "If the evidence can reasonably support

9  either affirming or reversing," the reviewing court "may not

10 substitute its judgment" for that of the Commissioner.   Id. at

11 720-21.

12 **IV.   THE EVALUATION OF DISABILITY**

13      People are "disabled" for purposes of receiving Social

14 Security benefits if they are unable to engage in any substantial

15 gainful activity owing to a physical or mental impairment that is

16 expected to result in death or which has lasted, or is expected

17 to last, for a continuous period of at least 12 months.   42

18 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257

19 (9th Cir. 1992).

20      A.   The Five-Step Evaluation Process

21      The ALJ follows a five-step sequential evaluation process in

22 assessing whether a claimant is disabled.   20 C.F.R.

23 §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821,

24 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).   In the first

25 step, the Commissioner must determine whether the claimant is

26 currently engaged in substantial gainful activity; if so, the

27 claimant is not disabled and the claim must be denied.

28 §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   If the claimant is not

3

1  engaged in substantial gainful activity, the second step requires
2  the Commissioner to determine whether the claimant has a "severe"
3  impairment or combination of impairments significantly limiting
4  her ability to do basic work activities; if not, a finding of not
5  disabled is made and the claim must be denied.
6  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has a
7  "severe" impairment or combination of impairments, the third step
8  requires the Commissioner to determine whether the impairment or
9  combination of impairments meets or equals an impairment in the
10 Listing of Impairments ("Listing") set forth at 20 C.F.R., Part
11 404, Subpart P, Appendix 1; if so, disability is conclusively
12 presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii),
13 416.920(a)(4)(iii).

14      If the claimant's impairment or combination of impairments
15 does not meet or equal an impairment in the Listing, the fourth
16 step requires the Commissioner to determine whether the claimant
17 has sufficient residual functional capacity ("RFC")[1] to perform
18 her past work; if so, the claimant is not disabled and the claim
19 must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The
20 claimant has the burden of proving she is unable to perform past
21 relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets
22 that burden, a prima facie case of disability is established.
23 <u>Id.</u>  If that happens or if the claimant has no past relevant
24 work, the Commissioner then bears the burden of establishing that
25 the claimant is not disabled because she can perform other

26

27      [1]  RFC is what a claimant can do despite existing exertional
28 and nonexertional limitations.  §§ 404.1545, 416.945; <u>Cooper v.
   Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

substantial gainful work available in the national economy.
§§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That determination
comprises the fifth and final step in the sequential analysis.
§§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966
F.2d at 1257.

   B.   <u>The ALJ's Application of the Five-Step Process</u>

     At step one, the ALJ found that Plaintiff had not engaged in
any substantial gainful activity since July 17, 2010.  (AR 14.)
At step two, the ALJ concluded that Plaintiff had severe
impairments of "old fracture of right distal tibia, status post
internal fixation and old fracture of the right lateral
malleolus, status post internal fixation."  (<u>Id.</u>)  Because the
treatment record did not show ongoing problems with the spine,
gluteal region, or right shoulder, the ALJ found the alleged
impairments in those areas to be nonsevere.  (AR 15.)  At step
three, the ALJ determined that Plaintiff's impairments did not
meet or equal a Listing.  (<u>Id.</u>)  At step four, the ALJ determined
that Plaintiff had the RFC to perform medium work with some
additional limitations.[2]  (AR 15-16.)  Based on the VE's
testimony, the ALJ found that Plaintiff was able to perform her
past relevant work as a nurse's assistant as generally performed.
(AR 19.)  Thus, the ALJ found that Plaintiff was not disabled.
(AR 20.)

_____

     [2]   "Medium work" involves "lifting no more than 50 pounds at
a time with frequent lifting or carrying of objects weighing up to
25 pounds."  §§ 404.1567(c), 416.967(c).

**V.    DISCUSSION**

Plaintiff argues that the ALJ erred in assessing the opinion of Dr. Terrance P. Flanagan and discounting Plaintiff's credibility.  (J. Stip. at 3.)

A.    The ALJ Did Not Err in Assessing Dr. Flanagan's Opinion

Plaintiff contends that the ALJ failed to provide an adequate basis for discounting Dr. Flanagan's findings, particularly with respect to her right shoulder.  (J. Stip. at 4.)

1.    Background

On September 4, 2011, Dr. Flanagan performed a complete orthopedic evaluation of Plaintiff at the request of the California Department of Social Services.  (AR 279-84.)

He noted Plaintiff's complaints of pain in her neck, upper back, lower back, both shoulders, left hand, right foot, right ankle, and both hips.  (AR 279; see also AR 280.)  Dr. Flanagan observed that Plaintiff sat and stood with normal posture, rose from a chair without difficulty, had normal gait, and walked without difficulty and without an assistive device.  (AR 281.) She had full range of motion in her neck with pain and had tenderness in the cervical paraspinal muscles.  (Id.)  Her range of motion in her back was limited by pain.  (Id.)  She also had pain with rotation of her trunk and tenderness in the thoracic and lumbar paraspinal muscles.  (Id.)

Plaintiff had normal range of motion in her shoulders but

1  positive Hawkins and Neer signs[3] on the right.  (Id.)  She had

2  normal range of motion in her hips but pain upon palpation of her

3  gluteal muscles.  (AR 282.)  She had pain with palpation and

4  range of motion in her right ankle.  (Id.)  Plaintiff

5  demonstrated motor strength of four out of five in bilateral hip

6  flexion, knee extension, ankle plantar and dorsiflexion, and

7  bilateral shoulder abduction, but Dr. Flanagan attributed her

8  diminished ability in these exercises to limited effort because

9  of pain rather than "a true neurologic result."  (AR 283.)  Her

10  motor strength was otherwise grossly normal.  (Id.)  Straight-

11  leg-raise and other neurologic tests were negative.  (Id.)  The

12  rest of the examination was also normal.  (See AR 281-83.)

13      Dr. Flanagan diagnosed cervical, thoracic, and lumbar

14  myofascial strain, bilateral gluteal strain, right-rotator-cuff

15  tendinitis, and right-ankle and foot posttraumatic degenerative

16  changes.[4]  (Id.)  He opined that Plaintiff could lift and carry

17  only 20 pounds occasionally and 10 pounds frequently on the right

18  but 50 pounds occasionally and 25 pounds frequently on the left.

19  (AR 284.)  She could stand or walk and sit for six hours each in

20

21      [3]    Neer and Hawkins-Kennedy impingement tests are used to

22  diagnose impingements and tears in the rotator cuff.  See Physical

   Therapist's Guide to Rotator Cuff Tear, Am. Physical Therapy Ass'n,

23  http://www.moveforwardpt.com/symptomsconditionsdetail.aspx?cid=95

24  bd746b-b25f-46f5-8373-fb56c9f6b46a#.Uxo2Pz9dVc0 (last visited July

   14, 2014).

25      [4]    For persons suffering myofascial pain syndrome, pressure

26  on sensitive points in the muscles causes pain in seemingly

   unrelated parts of the body.    See Diseases and Conditions:

27  Myofascial Pain Syndrome, Mayo Clinic, http://www.mayoclinic.org/

28  diseases-conditions/myofascial-pain-syndrome/basics/definition/CO

   N-20033195?p=1 (last updated Jan. 5, 2012).

an eight-hour day.  (<u>Id.</u>)  She could climb, stoop, kneel, and crouch frequently and reach overhead on the right occasionally. (<u>Id.</u>)

### 2. Applicable law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff.  <u>Lester</u>, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  <u>Id.</u>

When a treating or examining doctor's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons.  <u>See</u> <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting <u>Lester</u>, 81 F.3d at 830-31).  When a treating or examining physician's opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it.  <u>Id.</u>

### 3. Analysis

The ALJ gave specific and legitimate reasons for giving only "some weight" to Dr. Flanagan's opinion.  (AR 19.)

The ALJ found that Dr. Flanagan's recommendation that Plaintiff be restricted to light work with her right-upper extremity was not supported by his findings.  (AR 19.)  Although Dr. Flanagan noted positive Hawkins and Neer signs in Plaintiff's upper right shoulder, she had normal range of motion in both

8

shoulders.  (AR 18; <u>see</u> AR 282.)  And Dr. Flanagan dismissed her apparent weakness when abducting her shoulders as attributable to limited effort because of pain rather than indicative of a neurological issue.  (AR 18; <u>see</u> AR 283.)  Plaintiff herself reported that her right-shoulder pain was only intermittent but worsened with overhead activity (AR 18; <u>see</u> AR 280), a limitation the ALJ took into account by limiting Plaintiff to only occasional overhead reaching with her right arm (<u>see</u> AR 16, 19), just as Dr. Flanagan recommended.  That Dr. Flanagan's findings did not support a restriction to light work with the right shoulder but only a limitation on right-shoulder abduction was a legitimate basis upon which to discount his opinion.  <u>See</u> <u>Thomas</u> <u>v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Batson v. Comm'r</u> <u>Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>Chaudhry</u> <u>v. Astrue</u>, 688 F.3d 661, 671 (9th Cir. 2012) (ALJ need not accept medical opinion that is inconsistent with clinical findings).  Moreover, the ALJ was entitled to rely on the vocational expert's testimony that it was not "reasonable that somebody would be able to lift and/or carry 50 pounds occasionally on the left . . . with just one arm, and then have a limitation to light . . . on the other" (AR 50), as Dr. Flanagan had opined.  <u>Cf.</u> <u>Bayliss v.</u> <u>Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005).

     The ALJ also found that Dr. Flanagan's findings were inconsistent with the longitudinal medical evidence.  (AR 14-15, 19.)  Although Dr. Flanagan diagnosed myofascial strain, gluteal strain, and right-rotator-cuff tendinitis, the ALJ found "very little indication the claimant has [been] treated for these impairments after the alleged onset date" and "no evidence of

9

ongoing, persistent treatment or problems associated with these
impairments after the alleged onset date." (AR 14.)  Even
Plaintiff's attorney acknowledged that there was "minimal
evidence" and that the record was "one of the thinnest that I've
even been really a part of." (AR 30.)  The medical evidence of
back, neck, and shoulder pain consisted primarily of treatment
notes from chiropractor David G. Madison, which reflected only
intermittent treatment and few references to shoulder pain.
(See AR 245-78.)  As the ALJ noted, the record contains little
diagnostic evidence pertaining to these ailments.  (AR 18.)  Dr.
Madison's treatment notes contain occasional range-of-motion
measurements (see AR 250, 261) but primarily report Plaintiff's
reports of her symptoms, any muscle tenderness or spasm, and the
manipulations he performed (see, e.g., AR 246-48, 250, 254-56,
259).  And it appears Plaintiff did not mention neck, back, or
shoulder pain in either of her visits to Dr. Michele Martinez.
(See AR 238-39.)  Plaintiff stated that she visited Dr. Martinez
rarely because she could not afford an office visit.  (AR 60.)
Dr. Martinez's notes reflect, however, that even when Plaintiff
did visit her, the doctor did not prescribe urgent or substantial
treatment.  (See AR 238-44.)

     Additionally, Plaintiff acknowledged that with chiropractic
care she was able to care for her mother, who weighed about 300
pounds, was bedridden, and relied upon Plaintiff to help her go
to the bathroom, sit up, and roll over.  (AR 40.)  Being able to
work with treatment is inconsistent with being disabled.  See
§§ 404.1520(a)(iv), 416.920(a)(iv) ("If you can still do your
past relevant work, we will find that you are not disabled.");

<u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1040 (9th Cir. 2008)
(response to conservative treatment undermined allegations of
disabling impairments).  Indeed, Plaintiff stopped working only
because her mother died.

Moreover, the ALJ noted that Plaintiff's pain was treated
conservatively, with chiropractic care and nonsteroidal
antiinflammatory medications.  (AR 16-17; <u>see</u> AR 247, 251, 254,
259; <u>but see</u> AR 60 (Plaintiff reporting she took hydrocodone when
she could afford it).)  Nor do her treatment notes indicate that
her pain had grown worse.  (AR 17; <u>see also</u> AR 29, 39-40
(Plaintiff testifying that most of her problems had existed
before onset date and while she was working or caring for her
mother); AR 82 (Plaintiff reporting on Dec. 16, 2011, "no
worsening of medical condition").)  In fact, the treatment notes
suggest that Plaintiff improved with the conservative treatment
she received.  (AR 14-15; <u>see</u> AR 248 (on Aug. 10 and 13, 2010,
Plaintiff reporting lumbosacral area was "a little better"); <u>id.</u>
(on Aug. 16, 2010, cancelling appointment because "doing
better"); AR 246 (on Aug. 20, 2010, reporting lumbosacral area
"still bothers me some but it's better th[a]n before"); <u>id.</u> (on
Aug. 27, 2010, reporting lumbosacral area "not to[o] bad" but
"some" pain in upper back and collarbone); <u>id.</u> (on Sept. 3, 2010,
cancelling appointment because "doing better").)

Neither of Plaintiff's treating practitioners recommended
greater restrictions than those in the RFC; indeed, neither
Dr. Martinez's nor Dr. Madison's notes reflect significant
complaints of right-shoulder pain.  (AR 17; <u>see generally</u> AR 238-
39, 246-78, 288.)  Moreover, the state-agency physicians who

11

examined Plaintiff's medical records opined that she was capable
of medium work, including with her right side, as long as she was
limited to only occasional overhead reaching with her right arm.
(AR 19; see AR 62-63, 84-85.)  That Dr. Flanagan's opinion that
Plaintiff could do only light work with her right arm was not
supported by his own findings or by Plaintiff's treatment record
and was contradicted by the findings of state-agency physicians
were legitimate bases upon which to discount his opinion.  See
§§ 404.1527(c)(4), 416.927(c)(4) (explaining that more weight
should be afforded to medical opinions that are consistent with
the record as a whole); Batson, 359 F.3d at 1195 (holding that
ALJ may discredit physicians' opinions that are "unsupported by
the record as a whole . . . or by objective medical findings").

        Remand is not warranted on this basis.

        B.   The ALJ Did Not Err in Assessing Plaintiff's Credibility

        Plaintiff contends that the ALJ failed to properly evaluate
her credibility.  (J. Stip. at 11.)

             1.   Applicable law

    An ALJ's assessment of pain severity and claimant
credibility is entitled to "great weight."  See Weetman v.
Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779
F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to
believe every allegation of disabling pain, or else disability
benefits would be available for the asking, a result plainly
contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina v. Astrue, 674
F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks
omitted).

        In evaluating a claimant's subjective symptom testimony, the

12

ALJ engages in a two-step analysis.  See Lingenfelter, 504 F.3d
at 1035-36.  "First, the ALJ must determine whether the claimant
has presented objective medical evidence of an underlying
impairment [that] could reasonably be expected to produce the
pain or other symptoms alleged."  Id. at 1036 (internal quotation
marks omitted).  If such objective medical evidence exists, the
ALJ may not reject a claimant's testimony "simply because there
is no showing that the impairment can reasonably produce the
degree of symptom alleged."  Smolen v. Chater, 80 F.3d 1273, 1282
(9th Cir. 1996) (emphasis in original).  When the ALJ finds a
claimant's subjective complaints not credible, the ALJ must make
specific findings that support the conclusion.  See Berry v.
Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).

     Absent affirmative evidence of malingering, those findings
must provide "clear and convincing" reasons for rejecting the
claimant's testimony.  Lester, 81 F.3d at 834.  If the ALJ's
credibility finding is supported by substantial evidence in the
record, the reviewing court "may not engage in second-guessing."
Thomas, 278 F.3d at 959.

          2.   Analysis

     Contrary to Plaintiff's contention, the ALJ provided clear
and convincing reasons for discounting her credibility.  The ALJ
found her allegations of disabling pain to be inconsistent with
both the objective medical evidence and Plaintiff's activities,
which he found indicated "an attempt by the claimant to
exaggerate the severity of her symptoms."  (AR 17.)

     With respect to the medical evidence, as noted above, the
ALJ found that Plaintiff was prescribed only conservative

treatment for her back, neck, and shoulder ailments and had improved with that treatment.  Plaintiff's reliance on and response to conservative treatment is a clear and convincing reason to discount her allegations of disabling impairments.  See Tommasetti, 533 F.3d at 1040 (holding that claimant's response to conservative treatment undermined his reports of disabling symptoms); Parra, 481 F.3d at 751 (noting "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").  Moreover, Plaintiff's treatment records contained little diagnostic evidence of debilitating back, neck, or shoulder pain.  And although Dr. Flanagan opined that Plaintiff's right shoulder required a light-work limitation, there is little evidence of shoulder treatment in the record, and neither her treating practitioners nor the state-agency physicians found her to require greater restrictions than those in her RFC.[5]  That Plaintiff's allegations of pain were inconsistent with the medical evidence was a legitimate basis for discounting her credibility.  See Lingenfelter, 504 F.3d at 1040 (in determining credibility, ALJ may consider "whether the alleged symptoms are consistent with the medical evidence"); see also Carmickle, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir.

---

[5]    Claimant also testified that she had used a cane "very often" since 2007 because of the pain in her back and hips.  (AR 47.)  There's no evidence, however, that the cane was prescribed to her by a medical provider, and she did not use it when examined by Dr. Flanagan or at the hearing.  (Id.)

1   2005) ("Although lack of medical evidence cannot form the sole
2   basis for discounting pain testimony, it is a factor that the ALJ
3   can consider in his credibility analysis.").

4        Plaintiff's statements about her activities also undermined
5   her claims of disabling impairments.  As the ALJ noted, although
6   Plaintiff alleged disability beginning in July 2010, her
7   impairments began significantly earlier, there is little if any
8   evidence that they worsened with time, and she continued working
9   despite them.  (AR 17.)  She reported to Dr. Flanagan that she
10  had suffered joint pain for approximately a decade and broke her
11  ankle in March 2007.  (AR 280.)  She testified, however, that she
12  left private employment as a nurse's assistant in 2007 not
13  because of these impairments but in order to become a full-time
14  caregiver to her mother, a job she testified required comparable
15  exertion.  (AR 16, 17-18; see AR 34-35, 38.)  For instance,
16  Plaintiff testified that she spent all of her waking hours caring
17  for her mother, who was bedridden and weighed 300 pounds,
18  including lifting, turning, bathing, dressing, and feeding her.
19  (AR 16; see AR 38-42.)  Thus, she was employed as a caregiver to
20  others and then became her mother's full-time caregiver while
21  suffering almost all of the medical complaints she later alleged
22  made her disabled, and she stopped working only when her mother
23  died.  (See AR 28-29 (Plaintiff testifying that her complaints
24  related to "body parts [that] were bothering [her] when [she was]
25  working"); AR 34-35 (testifying that she could have returned to
26  her prior position after her broken ankle healed); AR 39-40
27  (testifying that she suffered dizziness and fatigue while caring
28  for mother); AR 41, 277 (reporting to chiropractor that she could

15

not walk or stand a long time more than a year before she stopped caring for her mother).)  This was a proper basis to discount her allegations of disabling impairments.  <u>Cf.</u> <u>Bruton v. Massanari</u>, 268 F.3d 824, 828 (9th Cir. 2001) (as amended) (affirming adverse credibility finding because claimant stopped working when laid off, not when injured); <u>Lobato v. Astrue</u>, No. SACV 11-01337-MAN, 2012 WL 5992280, at *9 (C.D. Cal. Nov. 30, 2012) (finding that work history was proper basis to discount credibility of allegations when claimant was gainfully employed for years while suffering from allegedly disabling impairments and no evidence suggested she stopped working because of those impairments).  Moreover, the ALJ found, based on Plaintiff's testimony, that she likely "would have continued to provide this care had her mother not passed away" in July 2010.  (AR 16; <u>see</u> AR 41 (Plaintiff complained of trouble standing and walking a year before she stopped caring for her mother).)  He found that this too detracted from the credibility of Plaintiff's claim that she became disabled in July 2010.  (<u>See</u> AR 16-17); <u>see</u> <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999) ("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.").

       That Plaintiff's "allegedly disabling impairments were present at approximately the same level of severity prior to the onset date" and that she worked "despite having the pain symptoms and dizziness that [plagued] her" at the time of the hearing are

clear and convincing reasons for discounting her allegations.
(AR 17); <u>see</u> <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219,
1227 (9th Cir. 2009) (upholding ALJ's adverse credibility
determination in part because claimant "recently worked as a
personal caregiver for two years, and has sought out other
employment since then"); <u>Tommasetti</u>, 533 F.3d at 1039 (holding
that ALJ may consider many factors in weighing a claimant's
credibility, including "ordinary techniques of credibility
evaluation, such as . . . inconsistent statements concerning the
symptoms . . . and . . . the claimant's daily activities").

     This Court is limited to determining whether the ALJ
properly identified reasons for discrediting Plaintiff's
credibility. <u>Smolen</u>, 80 F.3d at 1284. The inconsistencies
between Plaintiff's allegations and both the medical evidence and
her activities as a caregiver were proper and sufficiently
specific bases for discounting her claims of disabling symptoms,
and the ALJ's reasoning was clear and convincing. <u>See</u>
<u>Tommasetti</u>, 533 F.3d at 1039-40; <u>Houghton v. Comm'r Soc. Sec.</u>
<u>Admin.</u>, 493 F. App'x 843, 845 (9th Cir. 2012). Because the ALJ's
findings were supported by substantial evidence, this Court may
not engage in second-guessing. <u>See</u> <u>Thomas</u>, 278 F.3d at 959.

     Remand is not warranted on this ground.

1    **VI.   CONCLUSION**

2          Consistent with the foregoing, and pursuant to sentence four

3    of 42 U.S.C. § 405(g),[6] IT IS ORDERED that judgment be entered

4    AFFIRMING the decision of the Commissioner and dismissing this

5    action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve

6    copies of this Order and the Judgment on counsel for both parties.

7

8    DATED: August 27, 2014          _____

9                                    JEAN ROSENBLUTH
                                     U.S. Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

─────────────────

26         [6]    This sentence provides: "The [district] court shall have
     power to enter, upon the pleadings and transcript of the record, a
27   judgment affirming, modifying, or reversing the decision of the
     Commissioner of Social Security, with or without remanding the
28   cause for a rehearing."

                                    18